**William R. HINDMAN,**
**Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 11662.**

Missouri Court of Appeals,
Southern District,
Division Four.

March 20, 1980.

Motion for Rehearing or to Transfer to
Supreme Court Denied April 10, 1980.

Application to Transfer Denied
May 13, 1980.

Gregory K. Johnson, Springfield, for movant-appellant.

John D. Ashcroft, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM:

Movant (then defendant) was convicted in the Circuit Court of Webster County of assault with intent to kill with malice aforethought. § 559.180.[1] The conviction was affirmed upon appeal. *State v. Hindman*, 543 S.W.2d 278 (Mo.App.1976). Thereafter, movant filed a Rule 27.26 motion listing 37 grounds for vacating, setting aside or correcting his conviction and 25-year sentence. After an extensive evidentiary hearing before a special judge, the court made findings of fact and conclusions of law upon the issues presented and overruled the motion. Movant appealed to the Supreme Court which, per Rule 84.04(i), granted him leave to file a brief in excess of 100 pages. His brief consisted of 141 pages. The state responded with a 65-page brief. Including subpoints, movant's brief, inter alia, contained 38 points relied on, many of which are duplicitous and repetitious. After hearing oral arguments and considering the matter (and the multitudinous points relied on) the Supreme Court under date of January 16, 1980, made the following order: "Submission set aside. Cause ordered transferred to Missouri Court of Appeals, Southern District, for lack of jurisdiction in the Supreme Court."

In reference to briefs on appeal, Rule 84.04(h) mandatorily requires: "All statements of fact *and argument* shall have specific page references to the transcript on appeal, or if the transcript is printed, to the printed transcript."[2] (Our emphasis). We are confronted in this matter with five separate transcripts, i. e., [1] "the Appeal Transcript in this cause (TR)", [2] "the preliminary hearing transcript in the original crim-

---

1. References to statutes and rules are to RSMo 1969, V.A.M.S., and to Missouri Supreme Court Rules of Procedure, V.A.M.R.

2. From the 1979 Missouri Supreme Court Rules of Civil Procedure, which obtained at the time of writing of movant's brief on appeal.

inal charge (Prelim TR)", [3] "the original trial transcript (Trial TR)", [4] "separate transcript testimony of Dr. Cover and Wilma Agee (Fed. TR)" and [5] "the separate transcribed testimony of Judge M. J. Huffman and Mrs. Cogdill (Stip TR)." Without counting subpoints, seven points relied on, consisting of 42% of the argument portion of movant's brief, are presented with no page references to any of the five transcripts. The remaining 58% of the argument section of the brief (concerning 16 principal points relied on) bears an average of a meager two and one-quarter page references per point. Because the argument portions of the brief contain no transcript page references and the remainder represents a near total dearth of references to the five transcripts submitted, we would be justified in summarily dispatching the appeal herein for failure to comply with the mandates of Rule 84.04(h). *Stephan v. World Wide Sports, Inc.*, 539 S.W.2d 591, 592 (Mo.App.1976); *Ward v. Johnson*, 480 S.W.2d 104, 107[8] (Mo.App.1972). Cf. *Overall v. State*, 540 S.W.2d 637, 638 (Mo. App.1976). Nonetheless, we will consider, where warranted, the points relied on in a fashion more abbreviated than the prolix declamations of movant would suggest. For those interested in a verbatim recasting of the points relied on (without citations), they may be found in the Appendix hereto.

## I.

In fine, movant's initial point relied on is that he was denied effective assistance of counsel in the criminal case because of counsel's failure to subpoena "numerous material witnesses" and that this omission deprived him of an opportunity "to convey . . . his defense to the charge." The identity of the "numerous material witnesses", what their testimony would have been and "wherein and why" their absence deprived movant of an opportunity to further his defense, whatever that may have been, is left to guess, surmise, speculation and conjecture unless we resort to the five transcripts on appeal and the argument portion of movant's brief. This is something we are not required to do because, as written,

movant's point violates the mandatory requirements of Rule 84.04(d). *State v. Yearwood*, 510 S.W.2d 43, 44[2] (Mo.App.1974). Furthermore, we note that the argument portion of the brief under the first point relied on (consisting of 15 pages) is one of the points containing no page references to any of the five transcripts on appeal. As already noted, this is a violation of Rule 84.04(h).

Nevertheless, and in excess of duty, we cursorily examine the point. Movant asserts that his defense was "diminished capacity" or "diminished or partial responsibility" and that the failure of defense counsel in the criminal trial to call certain medical personnel made it impossible to prove that defense. In *State v. Anderson*, 515 S.W.2d 534, 539[5, 6] (Mo. banc 1974), it was recognized that § 552.030(3)(1) "was intended to make admissible evidence to prove the absence (due to mental disease or defect) of some element or elements of the offense charged and to accord to that evidence the same effect as other evidence (not based on mental disease or defect) which might be offered for that purpose." Just what element or elements of § 559.180 (the offense for which movant was convicted) the unoffered medical evidence was supposed to negate, we do not know, except that it purportedly would have shown "diminished capacity" due either to the sometimes fact that Valium, Percodan and alcohol intake potentiate one another or that movant, when the crime was committed, "was suffering from a psychiatric illness."

In the Rule 27.26 hearing movant, who had "the burden of establishing his grounds for relief by a preponderance of the evidence" [Rule 27.26(f)], had only the testimony of treating physician William C. Kubitschek, D.O., Thomas N. Cofer, M.D., and the evidence of four medical prescriptions by Robert L. Sample, M.D., for "10 mgs. Valium—2–3 per day for pain; Percodan—1 every 4 hours as needed for pain. Sorbitrate—1 tablet as needed for pain, no limit per day; Panwarfin—1 tablet daily." Dr. Cofer, who only saw movant one time, and Dr. Kubitschek, related, in effect, that Vali-

um and Percodan may, depending on the individual, "potentiate one another" and, when mixed with alcohol, would "in most cases" affect a person's judgment. Although Dr. Kubitschek opined the intake of Valium, Percodan and alcohol "can potentiate one another" and "may" cause confusion, depression or rage or an elevation of mood or disorientation, he stated that the combination of the drugs, sans alcohol, did not upset movant or make him "wild." Albeit Dr. Kubitschek concluded that movant, immediately before commission of the crime in question, "was suffering from a psychiatric illness," he was never asked what that illness purported to be or whether it would or could have the effect of diminishing or partially diminishing movant's responsibility regarding any element or elements of the crime for which movant was convicted.

The crime in question occurred between midnight October 26 and 1 a. m. October 27, 1973. On the 26th, near noon, movant obtained the above noted prescriptions from Dr. Sample and had them filled. In the 12-hour period after obtaining the medication and before the crime, movant should have taken no more than one or two Valium and three Percodan pills. However, at the criminal trial movant testified that on the afternoon of the 26th he took "three of each of the pills" prescribed and at "about 8:00 o'clock" that night he took four more Valium and four more Percodan tablets. In addition, so movant-then-defendant testified, near 8:30 p. m. he consumed three or four double-shot drinks of whisky.

■ Had all of the medical evidence adduced on the Rule 27.26 motion been presented at the trial of the criminal charge, movant would not have established his "partial or diminished responsibility." There was no evidence that the unknown "psychiatric illness" caused a diminution of responsibility for the crime committed. The only other evidence that could relate to diminished responsibility was that the claimed partial or diminished responsibility was induced by movant's self-overindulgence in drugs and whisky which produced voluntary intoxication. The terms "mental disease or defect" do not include alcoholism or drug abuse without psychosis (§ 552.010), and self-induced intoxication, whether via voluntary intake of alcohol, drugs or both, is not an acceptable defense in a criminal case. *State v. Hegwood*, 558 S.W.2d 378, 381[4] (Mo.App.1977); *State v. Hindman*, supra, 543 S.W.2d at 286[21]. Movant's first point relied on has no merit.

II.

■ Movant's second point relied on, insofar as the requirements of Rule 84.04(d) are concerned, fares no better than the first. In one segment of argument under this point movant claims inattention of trial counsel to a purported inconsistency between the trial testimony of State Highway Patrol Sergeant Crafton and the prosecutor's statement at the preliminary hearing "suggesting" that Crafton had not participated in the investigation of the crime. To say the least, this purported inconsistency represents a desperate grasping at straws. At the preliminary hearing in a colloquy between court and counsel, the prosecutor stated that certain persons (not including Crafton) had found live rounds and expended shells on the courthouse lawn where movant (then defendant) had allegedly fired several shots from his rifle. At trial Sergeant Crafton acknowledged that persons other than he had actually discovered the shells and casings. He testified that after the shells were found, he marked where they were located and thereafter collected and marked them for identification. If defendant's lawyer, in failing to pursue this tenuous difference, was guilty of ineffective assistance of counsel, we fail to perceive it.

■ In another section of the argument on the second point movant claims ineffective assistance of trial counsel because the attorney did not know until after the trial that the lawyer who first represented movant had entered an alternate plea of not guilty by reason of mental disease or defect. At the hearing on the Rule 27.26 motion, defense counsel testified that movant had advised him that he did not want to assert

the alternate plea because if it proved successful he would be sent to Fulton State Hospital, a public mental health facility, and this he (movant) did not want to happen. Of course, the credibility of witnesses at an evidentiary hearing on a motion for postconviction relief is a matter for the trier of the facts. *Stevens v. State,* 560 S.W.2d 599, 600[2] (Mo.App.1978). The trial court had the right to believe the testimony of defense counsel at the criminal trial and, in light thereof, to conclude any claimed oversight, if so, was inconsequential and nonprejudicial to movant.

■ The third and last segment of argument under this point relates to trial counsels' neglect to request a speedy trial in this case and their apparent lack of knowledge that the lawyer who represented movant (then defendant) during the preliminary aspects in the matter had made such a request. However, nowhere does movant undertake to demonstrate that a trial conducted August 9–10, 1974, for a crime committed October 26–27, 1973, was prejudicial to him. Furthermore, movant conveniently overlooks the fact that, because of his pleas to the crime charged, he was sent to Fulton State Hospital for examination from October 31, 1973, until December 7, 1973, and that, due to a heart attack, he was hospitalized in Springfield and at Jefferson City from the first week of June 1974, until July 7 or 9, 1974. In other words, two months of the nine and one-half months which elapsed from the date of crime and trial found defendant undergoing examination and treatment for reasons or conditions over which his trial lawyers had no control. Here there was an actual delay of only seven and a half months from the time of the crime until the trial was conducted. With no claim or showing that such a short delay was in any way prejudicial, we find no merit to this portion of defendant's point. Cf. *State v. Haddix,* 566 S.W.2d 266, 274–275[10] (Mo.App.1978).

### III.

■ The gist of movant's third rambling point relied on is that he was denied effective assistance of counsel in the criminal trial because his lawyers failed to subpoena Dr. Sample to prove that he had prescribed Valium and Percodan for movant and that defense counsel misled the trial court in the criminal case by declaring ignorance of such prescriptions until the second day of trial. What has been said under Point I anent the lack of medical testimony, when viewed in light of movant's voluntary ingestion of medication far in excess of the dosages prescribed, coupled with intake of whisky, requires denial of this point. Also, whether counsel did or did not undertake to mislead the trial court in the criminal court is of no moment here because movant has not undertaken to demonstrate how such misleading, if so, was prejudicial to him. Point III is denied.

### IV.

■ The answer to this prolix point relied on lies in movant's repetitive undertaking to mislead this court by assuming, contrary to fact, that his intake of drugs and alcohol at the time in question constituted involuntary (rather than voluntary) intoxication so that the defense of diminished capacity was available and should have been proved by medical evidence and instructed upon by the court. We again iterate that no alcoholic beverages whatsoever had been medically prescribed for movant's consumption on the dates of the crime and that his voluntary ingestion of drugs exceeded the prescribed dosages five or six times. Voluntary intoxication by alcohol and/or drugs is no defense to a criminal charge in Missouri and as the rule does not allow a jury to consider such intoxication, counsel and the court did not err in failing to request and instruct upon the issue. *State v. Hegwood,* supra, 558 S.W.2d at 381[4, 6].

### V.

In point V, movant adopts his argument and case citations which were presented in support of point IV. What has been said regarding point IV, supra, disposes of point V and demonstrates what has been previ-

ously observed about the points relied on, i. e., that many of them are duplicitous and repetitious.

## VI. and VII.

These two points, in substance, claim that movant was denied a fair criminal trial because (a) the circuit judge of Wright County (where the crime was committed) simultaneously disqualified himself and ordered the cause transferred to Webster County, which was outside the circuit, although movant's allegation of prejudice for a change of venue did not include the residents of the entire circuit, (b) movant's counsel in the criminal case did not object to the change of venue for the reasons just stated nor object to the proceedings because of an invalid arrest and denial of a speedy trial and (c) the circuit judge of Webster County did not reject or refuse the change of venue because of the foregoing reasons.

Movant jointly applied in the criminal matter for a change of venue and disqualification of the circuit judge of Wright County. Although the motion did not seek removal of the cause from the circuit court in which Wright County was located, and the then Rule 30.12 stated a disqualified judge was "deemed incompetent and disqualified to hear and try said case," the matter, as frequently happens, was resolved by mutual agreement between the prosecutor and movant's then attorney before the application/motion was formally presented to and acted upon by the court. If the venue at trial was, in fact, improper, it was waived and comes too late when not challenged before trial and when defendant makes motions for directed verdict without challenging venue before return of the verdict. Even assuming the venue was improper, it was waived and at no time did movant, as far as the records are concerned, ever complain of the matter until his Rule 27.26 motion was filed. *U. S. v. Haley*, 500 F.2d 302, 305[6, 7] (8th Cir. 1974). Moreover, movant cannot successfully complain that his case was removed to a circuit when he does not demonstrate, as here, that such removal was prejudicial to him after waiver. *State v. Crow*, 486 S.W.2d 248, 256–

257[21] (Mo.1972). Cf. *State v. Selle*, 367 S.W.2d 522 (Mo.1963). Furthermore, movant's efforts to disqualify the judge of the circuit court of Webster County on the eve of trial, is proof, in and of itself, that movant had accepted the previous change of venue and judge as proper. Movant's claim under this point as to denial of a speedy trial has already been considered and rejected. In answer to the claim regarding unlawful arrest, it suffices to observe that the invalidity of an arrest does not affect the jurisdiction of a court to try the defendant. *State v. French*, 528 S.W.2d 170, 172[2] (Mo. App.1975).

## VIII.

This is one of the seven points relied on wherein the argument portion of the brief, contrary to the mandate of Rule 84.-04(h), contains no page references to any of the five transcripts involved in this appeal. Nevertheless, it is enough to note that the failure of the transcript in the criminal trial appeal to recast the order of removal and to show the sheriff's endorsement on the warrant of commitment as specified in Rule 30.08 does not prove that such procedure was not followed. The record of such proceedings in the criminal transcript on appeal was unnecessary as the inclusion thereof was not required for the determination of any question presented for determination in the direct appeal. Rule 81.12(b). Moreover, the complaints voiced under this point (see Appendix) have heretofore been discussed and denied in consideration of points VI and VII, supra.

## IX.

Under this point movant complains that his arrest was illegal because the warrant therefor was void, his subsequent detention was therefore illegal and, as a result, the circuit court had no jurisdiction of either defendant, now movant, nor the subject matter. The answer to this complaint is that an allegedly illegal arrest and illegal detention, in and of themselves, are not proper grounds for a collateral attack upon a judgment via a Rule 27.26 motion. *Jack-*

*son v. State*, 512 S.W.2d 249, 252[1, 2] (Mo. App.1974).

### X.

Movant incorporates three claims in this point all having to do with his averred denial of a speedy trial. This is repetitious of the third and last segment of point II, supra, and is again denied.

### XI.

This point relied on has been discussed and decided under our joint treatment of points VI and VII and under point IX, supra.

### XII. and XIII.

These points, to the effect that the state adduced perjured testimony during the criminal proceedings, are denied simply because they are not true as already demonstrated in the first paragraph of point relied on II, supra.

### XIV.

 By this point movant claims ineffective assistance of counsel because of their failure in the criminal trial to timely move for the rule to exclude witnesses. As written, the point recognizes such a request was made. However, as the transcript suggests, defense counsel "thought" they had asked for the rule at the commencement of trial, although the trial court said "You did not" and refused to invoke it after two state witnesses had testified. "[T]o invoke or not invoke the rule excluding witnesses during the course of a criminal trial, even though requested by an accused, rests squarely within the discretion of the trial court, and does not constitute a matter of right on the part of an accused." *State v. Bynum*, 508 S.W.2d 216, 218[1] (Mo.App. 1974). When a matter rests in the trial court's discretion, its exercise of that discretion by denying the rule can hardly be said to demonstrate ineffective assistance of counsel. The basis for movant's contention of prejudice relates to the reliability of the testimony of the officers as to who found and marked exhibits discovered in the courtyard where the shooting occurred. In points II, XII and XIII, supra, it has been demonstrated that the so-called "confusion" attributed to such testimony was nonexistent and, therefore, nonprejudicial to movant. To sustain an assertion of ineffective assistance of counsel under a Rule 27.26 proceeding, movant should demonstrate that counsels' conduct or dereliction so prejudiced him as to have deprived him of a fair trial. *Fritz v. State*, 524 S.W.2d 197, 199[1] (Mo.App.1975). No such demonstration has been made as to this point and it is denied.

### XV.

 As presented, this point relied on is another example of movant's disregard of the mandates of Rule 84.04(d). Nowhere does the point attempt to demonstrate wherein and why transfer of movant (then defendant) from custody in a Springfield hospital to the penitentiary for medical treatment without notice or hearing constitutes a denial of equal protection and due process of law. Also, the point does not purport to state wherein and why such a pretrial transfer should serve as grounds for vacating, setting aside or correcting movant's sentence, or wherein and why such transfer made trial preparations virtually impossible or resulted in denial of effective assistance of counsel. Under the third part of point II, supra, we detailed the net time afforded movant and counsel to prepare for trial. Such time was more than adequate. Cf. *Hudson v. State*, 552 S.W.2d 244, 246[4] (Mo.App.1977), where 97 days was held sufficient for trial preparation.

### XVI.

 In this point movant claims ineffective assistance of counsel at the criminal trial because counsel failed to object to witness Renfro's testimony "on the grounds that alleged statements made by the movant were involuntary because of the drugged state of mind the movant was suffering from, as a result of the prescription drugs taken by the movant under doctor's orders." Once again, as in point IV, supra, movant undertakes to mislead this court.

As shown under point IV, movant did not take the drugs in the quantities prescribed, but overdosed himself both with drugs and whisky. Also, what was said in this court's original opinion, *State v. Hindman*, supra, 543 S.W.2d at 285–286[19, 20], is a sufficient answer to this point, which is denied.

### XVII.

■ Under this point movant claims ineffective assistance of counsel in the criminal trial for failure to object to the expert testimony of laboratory technician Buel who was employed by the Missouri Highway Patrol as a ballistician. What was said in *State v. Hindman*, supra, 543 S.W.2d at 284[12–14] applied with equal force to witness Buel. Defense counsel has wide latitude in the conduct of a defense and should not be shorted for failure to object to expert testimony by a witness who is eminently qualified. "Trial strategy is an inadequate basis for an attack on the competency of counsel." *Aikens v. State*, 549 S.W.2d 117, 121[10] (Mo.App.1977). The point is denied.

### XVIII.

■ The substance of this point is that movant had ineffective assistance of counsel in the criminal trial because of things done by the trial judge, i. e., the court on July 16th set the case for trial commencing August 9 and conducted the trial in two days when it should have taken longer. It is patently ludicrous to claim ineffective assistance of lawyers who are guilty of no more than following the lawful directions of the court. This point has no merit.

### XIX., XX. and XXI.

■ These repetitive points relied on raise nothing that has not been stressed before and do not demonstrate that movant in the criminal case was denied the substance of a fair trial. *O'Neal v. State*, 486 S.W.2d 206, 208[5] (Mo.1972). Assuming arguendo, as movant contends, that all of the pretrial procedures were illegal, this would not in any way prejudice his conviction when there is no showing, as here, that the trial evidence flowed from the alleged illegal pretrial proceedings. *Collins v. Swenson*, 443 F.2d 329, 331[2] (8th Cir. 1971). These points are denied.

### XXII. and XXIII.

The argument portions under these two concluding points, consisting of seven pages, contain but one reference to the Rule 27.26 transcript and one reference to the trial transcript which consists of 657 pages. We have condoned, to exhaustion, movant's utter disregard of the requirements of Rule 84.04(d) and (h). We decline, with cause, to carry movant's ignored appellate duties further.

Judgment affirmed.

All concur, except BILLINGS, J., concurs in result and files opinion.

MAUS, J., concurs in result of principal opinion.

BILLINGS, Judge, concurring in result.

I am of the opinion that movant's appeal should have been summarily dismissed by this Court because of the flagrant violations of Rule 84.04 as noted in the principal opinion. However, since the author of the opinion undertook to plow through the quagmire he was cast into by lot and laboriously, and charitably, reviewed the seemingly unreviewable, I concur.

#### APPENDIX

**I.**

The trial court erred in finding that movant was not denied equal application and due process of law by ineffective assistance of counsel, in that, said trial counsels failed to subpoena and call numerous material witnesses in the original criminal trial, although requested by movant to do so; that as a result of this action by trial counsel, movant was deprived an opportunity to convey to the trial court, or to the jury, his defense to the charge thus making said trial fundamentally unfair, with manifest injustice to the movant.

**II.**

The trial court erred in finding that movant was not denied equal protection and due process of law and effective assistance of counsel, in that, trial counsel failed to review the records in this case prior to going to trial and therefore was not prepared to take the case to trial.

**III.**

The trial court erred in finding that movant was not denied effective assistance of counsel, in that, counsel had full knowledge of the report

made by Dr. Sample and that he was a material witness yet failed to call Dr. Sample as a defense witness, although movant had been led to believe that Dr. Sample was going to testify. This deceptive act was compounded by defense counsel, in that, he misled the trial court into assuming that counsel had just become aware of who the doctor was who had written the prescriptions for the drugs the movant was taking on the day and night of the alleged offense, for treatment of a post "Acute Antero-septal myocardial Infarction", heart attack, e. g. and that this was the reason that he had not called the doctor as a witness. Said statement, by counsel to the court, was totally false.

IV.

The trial court erred in finding that:

(a) The judgment of conviction and sentence of movant in August of 1974, should not be vacated and set aside for the reason that movant was relying upon the affirmative defense of "Diminished or Partial Responsibility" or "Diminished Capacity", but that there was not a proffered instruction to direct the jury's attention to the facts which defendant contends constituted a denial to him of the due process of law contrary to the Missouri Constitution, Article I, Section 10 and 15 and the United States Constitution, Amendment 14 and further denied to him a fair trial and effective assistance of counsel contrary to the Missouri Constitution, Article I, Section 18(a) and the United States Constitution, Amendment 6;

(b) Trial counsel did not fail to preserve for purposes of appeal, a consideration of the defense of "Diminished or Partial Responsibility" or "Diminished Capacity" for consideration by the appellate courts and, therefore, movant was denied effective assistance of counsel contrary to the Missouri Constitution, Article I, Section 18(a) and the United States Constitution, Amendment 6;

(c) In the alternative, the judgment of conviction and sentence of movant in August of 1974, should not be vacated and set aside for the reason that movant's trial counsel was relying upon the defense of "Diminished or Partial Responsibility" or "Diminished Capacity" and that counsel knew or should have known, that it was a defense which is not accepted as a valid defense in the state of Missouri to the charge of assault with intent to kill, with malice aforethought.

V.

The trial court erred in finding that movant was not denied equal protection and due process of law by the ineffective assistance of counsel, in that, counsel failed to ask for an instruction as to the prescription drugs the movant was taking on October 26, 1973 and allowed the jury to misapprehend that said drugs were taken by movant for some purpose other than for which they had been prescribed, which was treatment for post antero-septal myocardial infarction. Failure of counsel to make a proper motion for an instruction deprived the movant of proper consideration, by the trial court and the jury, on the drug issue and the same resulted in a manifest injustice.

VI.

The trial court erred in finding that:

(a) The judgment of conviction of movant in August of 1974, should not be vacated and set aside for the reason that the Circuit Court of Wright County, Missouri, issued its order for change of venue from Wright County to Webster County in June of 1974, after The Honorable Clifford Crouch had entered an order disqualifying himself under the disqualification of judge application, and therefore said judge was without jurisdiction to enter said order for change of venue, and thus the Circuit Court of Webster County, Missouri, where movant was subsequently tried and convicted, was without jurisdiction over the person of movant or over the subject matter of the criminal proceedings under which he was tried and convicted;

(b) The judgment of conviction of movant in August of 1974, should not be vacated and set aside for the reason that (1) the application for change of venue in Wright County was based upon the biased and prejudiced inhabitants of Wright County, Missouri; (2) that the jurisdiction and power of the court, if any, under said application for change of venue was to the extent of a transfer of said criminal proceeding from Wright County, Missouri, of the 38th Judicial Circuit to another county within said 38th Judicial Circuit; (3) that in fact, the court transferred said cause, without said jurisdiction and power, to Webster County, Missouri which is in the 30th Judicial Circuit; (4) therefore because of improper change of venue the Webster County Circuit Court was without jurisdiction over the person of movant and without jurisdiction over the subject matter of said criminal proceeding;

(c) Movant did not suffer denial of effective assistance of counsel, in that, counsel failed to research the law surrounding disqualification of a trial judge and change of venue in a criminal case in the state of Missouri, and therefore movant was denied equal protection and due process of law, in that, counsel after having filed a motion and application for change of venue and disqualification of the Wright County trial judge, allowed the case to be transferred to the 30th Judicial Circuit by the trial judge in the 38th Judicial Circuit, when, in fact, and by operation of the law, the original judge was without jurisdiction to cause the change of venue to be executed, June 6, 1974.

VII.

The trial court erred in finding that the Circuit Court of Webster County did not deprive the movant of equal protection and due process of law, in that, Judge Charles V. Barker knew or should have known that Judge Clifford Crouch, Circuit Judge of Wright County, after having received a motion to disqualify said judge, was without authority to order a change of venue to Webster County and further that Judge Crouch was without authority and power to transfer the

cause to a county outside of the 38th Judicial Circuit.

### VIII.

The trial court erred in finding that the Circuit Court of Wright County properly transferred the criminal proceedings to the Circuit Court of Webster County for the reason that The Honorable Clifford Crouch failed to comply with the provisions under Criminal Rule 30.08, in that, said judge failed to enter his order commanding the sheriff to transfer the movant to the jail of the County of Webster in which he had removed said cause and further failed to order said sheriff to deliver movant to the keeper of said jail, together with the warrant or process by virtue of which movant was being imprisoned and held; that failure of Judge Crouch to comply with Rule 30.08, resulted in the Circuit Court of Webster County lacking jurisdiction over the person of movant as well as jurisdiction over the subject matter of said criminal proceedings and therefore was in violation of movant's constitutional rights.

### IX.

The trial court erred in finding that the judgment of conviction and sentence of movant in August of 1974, should not be vacated and set aside for the reason that the warrant under which movant was arrested and subsequently held was void and therefore the circuit court was without jurisdiction over the person of movant or of the subject matter of the proceedings pursuant to the void warrant; that as a result of the void warrant, the criminal proceedings against movant constituted a denial to him of the due process of law contrary to the Missouri Constitution, Article I, Sections 10 and 15 and the United States Constitution, Article [sic] 14.

### X.

The trial court erred in finding that:

(a) Movant was not denied equal protection and due process of law, in that, movant moved the court for a speedy trial at the circuit court arraignment, February 25, 1974, and the court addressed itself to the issue and set a date for trial on three charges to commence April 26–27, 1974. However, movant was not tried on the date set by the court, nor was a motion for continuance ever requested or granted.

(b) Movant was not denied effective assistance of counsel, in that, trial counsel failed to file a motion to dismiss the charges for denial of movant's constitutional rights to a speedy trial and for lack of jurisdiction of the trial court, at the time of trial;

(c) Movant did not suffer irreparable injury in the denial of equal protection and due process of law, in that, movant suffered a heart attack on or about June 1, 1974, while lodged in the Wright County jail, awaiting trial, some 5 weeks after his date set for trial on the speedy trial motion had expired and without notice as to why he had been denied his right to a speedy trial.

### XI.

The trial court erred in finding that movant did not suffer denial of effective assistance of counsel, in that, trial counsel's lack of knowledge of the law, and failure to research the same, caused descension (sic) in the 30th Judicial Circuit trial court, in that, counsel filed various motions to disqualify the trial judge in the 30th Judicial Circuit, including a writ of prohibition with the Supreme Court, when his proper and only remedy was to file a motion to withdraw the application for change of venue on the grounds that, (1) the trial judge in the 38th Judicial Circuit was without jurisdiction to order the change of venue, (2) the court lacked jurisdiction of the subject matter and therefore lacked jurisdiction to order the change of venue in the case for the reasons that, (a) in absence of a valid warrant at the magistrate level, the circuit court acquired no jurisdiction and (b) notwithstanding the invalid warrant claim, the circuit court lacked jurisdiction, in that, the court had denied the movant a speedy trial.

### XII.

The trial court erred in finding that movant was not denied equal protection and due process of law, in that, the state prosecutor knowingly and wilfully, with the intent to injure the movant, used perjured testimony during the course of the trial in the criminal case.

### XIII.

The trial court erred ·in finding that movant was not denied effective assistance of counsel, in that, the fact that the state prosecutor knowingly and wilfully, with the intent to injure the movant, used perjured testimony during the course of the trial in the criminal case was discoverable upon the record and counsels' failure to review the record and investigate the circumstances of the alleged finding, of the alleged evidence, and the handling of the same, rendered movant's trial fundamentally unfair and allowed the movant to be convicted by perjured testimony wilfully and knowingly used by the state to convict the movant.

### XIV.

The trial court erred in finding that movant was not denied equal protection and due process of law by ineffective counsel, in that, counsel failed to make a timely motion, before trial, invoking the exclusionary rule to exclude all witnesses from the courtroom and that failure of counsel to make said motion prejudiced the movant, in that, the state's witnesses were able to listen to each other testify and subsequently give testimony that was complementary to each other. Said testimony was to the prejudice of the movant resulting in denial of a fair trial and manifest injustice to the movant.

### XV.

The trial court erred in finding that movant did not suffer denial of equal protection and denial of due process of law, in that, without notice or hearing, movant was ordered transferred from the St. John's Hospital at Springfield, Missouri to the State Penitentiary prior to trial which resulted in denial of effective assistance of counsel and made trial preparation virtually impossible, in

that, movant was denied reasonable availability to counsel and family for the purpose of trial preparation.

### XVI.

The trial court erred in finding that movant was not denied equal protection and due process of law by the ineffectiveness of counsel, in that, counsel failed to object to the testimony of state's witness, Carroll Renfro, on the grounds that alleged statements made by the movant were involuntary because of the drugged state of mind the movant was suffering from, as a result of the prescription drugs taken by the movant under doctor's orders.

### XVII.

The trial court erred in finding that movant was not denied equal protection and due process of law by the ineffective assistance of counsel, in that, counsel failed to object to the testimony of state's witness, Buel, and the allegedly expert testimony given by Buel; this failure, on the part of counsel, to object to the conditions and methods employed by witness Buel, in reaching his conclusions pertaining to the ballistic opinion testified to, deprived the movant of a fair trial, in that, methods used by witness Buel, in making his ballistic evaluation and drawing his conclusions therefrom, were totally inadequate and same resulted in non-conclusive evidence being given to the jury on the theory that said evidence was conclusive.

### XVIII.

The trial court erred in finding that movant was not denied effective assistance of counsel and, equal protection and due process of law, in that, the trial court failed to give movant's trial counsel sufficient notice prior to the trial date, and said trial court did thereafter, require the trial to be completed in two days, when normally the trial would have taken four to five days to complete; that the trial court required and forced movant and his trial counsel to commence trial on a Friday morning, continuing to try that case all day Friday until late Friday night, resuming trial Saturday morning and continuing said trial late in the night on Saturday; that the long consecutive hours in trial, greatly reduced the effectiveness of movant's trial counsel, diminished the abilities of the jury to conceive and understand the evidence favorable to movant, therefore, denying to movant a fair trial.

### XIX.

The trial court erred in finding that:

(a) Movant was not denied equal application and due process of law, in that, he was arrested late night October 26, 1973, without a warrant or probable cause for arrest;

(b) Movant was not denied his constitutional right to call an attorney until the night of October 27, 1973;

(c) Movant was not denied equal protection and due process of law, in that, movant was denied his constitutional right to have counsel assist him during interrogation by sheriff, Rex Kelly and Deputy Calvin Mings.

### XX.

The trial court erred in finding that movant was not denied equal protection and due process of law, in that, he was unable to correspond with his counsel over an extended period of time for the reasons that the sheriff censored all of the movant's mail, coming and going, from the Wright County jail.

### XXI.

The trial court erred in finding that:

(a) Movant was not denied equal protection and due process of law, in that, the warrant that issued for the movant's arrest, October 27, 1973, was void and was without authority of law, in that, the warrant failed to have either a valid oath or an affirmation;

(b) Movant was not denied equal protection and due process of law, in that, he was not taken before a magistrate judge for a period of four days after having been taken into custody, and then, was denied the right to call counsel to assist him during the magistrate's arraignment;

(c) Movant was not denied equal protection and due process of law, in that, he was denied the assistance of counsel at the magistrate court arraignment at which the magistrate, without notice to the movant, his attorney, or family issued a commitment order to commit the movant to the Fulton State Mental Hospital, October 30, 1973;

(d) Movant was not denied equal protection and due process of law, in that, no valid warrant had issued for the movant's arrest prior to October 30, 1973, nor has a valid warrant ever issued. Consequently, the magistrate was without jurisdiction in this cause to proceed without a valid warrant, after the movant had been incarcerated in excess of 20 hours without a valid warrant for movant's arrest;

(e) Movant was not denied equal protection and due process of law, in that, the magistrate's order to commit the movant to the Fulton State Mental Hospital was without authority of law;

(f) Movant was not denied effective assistance of counsel, in that, counsel failed to move for dismissal of the charges at the circuit court arraignment for the reasons set forth in subparagraphs (a) through (e) above, inclusively.

### XXII.

The trial court erred in finding that:

(a) Movant was not denied equal protection and due process of law, in that, the state withheld, from discovery, evidence that was exculpatory to the movant by failing to disclose a report made to the Wright County Sheriff, Rex Kelly, and the State Prosecutor, Phil Huffman, by Dr. Robert Sample, of Ava, Missouri, on the morning of October 27, 1973, in which, Dr. Sample had told the sheriff and prosecutor that movant was suffering from a psychotic state of mind;

(b) Movant was not denied equal protection and due process of law, in that, the state failed to disclose the whereabouts of the left front door of the automobile that movant was alleged to have shot through, on the night of the alleged offense.

In fact, movant had to hire a private detective to locate the car after the state had denied movant discovery. When said car was located, the left front door had been removed, and allegedly disposed of, and movant was deprived of the right to have his experts examine the door to make a determination for the purpose of trial testimony;

(c) Movant was not denied effective assistance of counsel, in that, counsel failed to object to or file a motion to dismiss for the state's failure to disclose the information set forth in subparagraphs (a) and (b) above and counsel further failed to include any mention of these errors in his motion for new trial.

### XXIII.

The trial court erred in finding that movant was not denied effective assistance of counsel, in that, movant had entered a plea of not guilty by reason of temporary insanity resulting in diminished responsibility, at the time of the alleged offense, and trial counsel failed to file the requisite pretrial notice, in that (1) it was the movant's intent to rely on the diminished responsibility defense (2) it deprived the movant of consideration by the trial court resulting in the trial court failing to instruct the jury on the issue of diminished responsibility pursuant to 552.030(6) RSMo 1969 and (3) counsel's negligence deprived the movant of a hearing on the issue of diminished responsibility and thereby rendered the movant's trial constitutionally unfair.