William R. HINDMAN, Petitioner,

v.

Donald W. WYRICK, Warden,
Respondent.

No. 80-0709-CV-W-1.

United States District Court,
W. D. Missouri, W. D.

Feb. 11, 1982.

Albert N. Moskowitz, Asst. Federal Public Defender, Kansas City, Mo., for petitioner.

John Ashcroft, Atty. Gen., State of Mo., John M. Morris, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

This case pends on a State prisoner's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.

### I. *Procedural History*

The relevant history of this litigation begins with petitioner's conviction by a jury of the crime of assault with intent to kill with malice aforethought, pursuant to Section 559.180, R.S.Mo. (1969). The jury could not agree on the punishment to be inflicted and the court assessed punishment at twenty-five years imprisonment.

Petitioner appealed his conviction to the Missouri Court of Appeals, Springfield Division, which affirmed the conviction. *State v. Hindman*, 543 S.W.2d 278 (Mo.App.1976). During the pendency of that appeal, petitioner filed a petition for a writ of error *coram nobis* in the Circuit Court of Wright County, alleging that the proceedings brought against him were based on a void warrant, and lack of jurisdiction in the trial court. The Circuit Court of Wright County ruled against petitioner and dismissed the petition. Petitioner appealed to the Supreme Court of Missouri. Meanwhile, during the pendency of the *coram nobis* petition, petitioner had filed a motion to vacate under Rule 27.26, V.A.M.R., in the Circuit Court of Webster County. The Supreme Court of Missouri dismissed the *coram nobis* petition, granting petitioner leave to file an amended motion in the Rule 27.26 proceeding. *Hindman v. Crouch*, 560 S.W.2d 874 (Mo. banc 1978).

On November 2, 1978, after an extensive evidentiary hearing in which petitioner was represented by counsel, see Respondent's Exhibit G, the Circuit Court of Webster County denied petitioner's Rule 27.26 motion. The Circuit Court filed written findings of fact and conclusions of law.

Petitioner appealed that denial to the Supreme Court of Missouri, which transferred the case for final decision to the Missouri Court of Appeals, Southern Division. That court affirmed the judgment of the Circuit Court of Webster County in *Hindman v. State*, 597 S.W.2d 264 (Mo.App.1980). Thereafter, petitioner filed the petition currently before this Court.

■ This Court appointed the Office of the Federal Public Defender to represent petitioner and petitioner was ordered, through his appointed counsel, to file an amended complaint alleging those claims, from among the many in petitioner's *pro se* complaint, deemed substantial and properly exhausted in State court. Petitioner's *pro se* motion for an evidentiary hearing was denied at that time without prejudice. Petitioner has not seen fit to raise the motion anew. Because we find that petitioner had a full and fair hearing on his Rule 27.26 V.A.M.R. motion in State court, and the record thereof is fully before this Court, no evidentiary hearing is required. *Toler v. Wyrick*, 563 F.2d 372, 373 (8th Cir. 1977).

## II. *Summary of the Facts*

The facts, in terms favorable to the jury verdict, are summarized in *State v. Hindman*, 543 S.W.2d 278, 281–82, 287–88 (Mo. App.1976). Briefly, those facts as reliably found by the State court are as follows: The incident occurred around midnight October 26 to 1:00 a. m. October 27, 1973, when petitioner appeared at the door of one Carroll Renfro with a rifle in hand and forced Renfro to drive him to the courthouse in Hartville, Missouri. Enroute, petitioner told Renfro, "They [sic] is a lying, thieving, son-of-a-bitch down there I have got to kill." Petitioner instructed Renfro to "Pull up behind the Courthouse," "Park there beside where the Sheriff is at," and

"Get out and go down to the door and see if anybody is here." After Renfro "rattled the door" and got no response, petitioner said "Well, wait just a minute, and there will be someone here."

Police Officer Robert Dugger, responding to a tip received from two boys riding in an automobile, proceeded to the scene at the courthouse. Officer Dugger stopped near Renfro's truck; petitioner "whirled [the gun] right toward the windshield of the [police] car, right directly at me, aiming right in the chest." Officer Dugger then removed to the nearby post office and radioed for help. Petitioner told Renfro "to get out and go on home . . . There's going to be a shooting here in just a minute." As Renfro left, Officer Dugger pulled out from behind the post office in an attempt to follow Renfro's truck. Several shots rang out; Officer Dugger was hit in the arm and hip.

Soon after, Sheriff Kelly arrived on the scene. He was told where he could find petitioner and that petitioner wanted to surrender his weapon. He and a deputy proceeded to a motor company's lot where they found petitioner "hunkered down . . . between the building and a car" with a rifle in his hand. Petitioner told Sheriff Kelly "Come over here and I will give you this gun." He handed him the rifle and said, "I think I shot that there officer's arm off, didn't I?"

As Sheriff Kelly and petitioner walked back to the courthouse, petitioner told the Sheriff "that he had a bad heart condition, and that he didn't have long to live, and he said, 'I am going to get rid of some of these sons-of-bitches.'" At the courthouse petitioner inquired "Who was that officer that I shot his arm off?" and was told "That is the City Police, Bob Dugger." To this defendant responded, "I don't know Bob Dugger."

## III. *Issues Presented*

Petitioner presents three points, all of which were raised and considered in State court: (A) that he was deprived of his right to a speedy trial; (B) that he was deprived

of the right to assistance of counsel; and (C) that he was denied effective assistance of counsel.

We will proceed seriatum with the issues presented.

### A. Denial of Speedy Trial

Petitioner contends that he was denied his right to a speedy trial in that, despite his formal demand therefor, petitioner was not granted a trial until more than nine months had elapsed from his arrest and five months from his formal arraignment in Circuit Court.

Petitioner did not raise the speedy trial issue on direct appeal of his conviction. See State v. Hindman, supra. However, the issue was raised and decided adversely to petitioner on his Rule 27.26 motion and on appeal of that motion. See petitioner's Rule 27.26 motion, Claims 11–13, Respondent's Exhibit G at 1–5, 1–6; Hindman v. State, 597 S.W.2d at 269. The State Circuit Court made the following factual findings pertinent to petitioner's claim:

\* \* \* \* \* \*

6. Defendant was arrested late at night of October 26 or early morning of October 27 by Sheriff Kelly of Wright County .... [G at 249]

\* \* \* \* \* \*

15. On October 30, 1973 defendant was arraigned and was by the Magistrate committed to Fulton State Hospital to determine 'whether or not the defendant has a mental disease or defect within the meaning of Section 552.010 RS Mo. ....' [G. at 251]

16. Under date of December 10, 1973 a report of the psychiatric examination made pursuant to the provisions of Chapter 552 RSMo as ordered by Magistrate was filed. [Id.]

\* \* \* \* \* \*

19. A preliminary hearing was had on February 8, 1974.... Defendant was bound over to Circuit Court. [G. at 252]

\* \* \* \* \* \*

22. On February 25, 1974 the case was set for trial by agreement of all parties. [Id.]

23. On June 6, 1974 defendant made application for change of Venue and change of Judge, which application was sustained and Venue changed to Webster County, Missouri by agreement of the attorneys. [Id.]

\* \* \* \* \* \*

47. On June 17, 1974 the Judge ordered Defendant be delivered to the Missouri Department of Corrections to be held for Webster County, Missouri, pending trial. Defendant had suffered a heart attack and required hospitalization. Webster County had no adequate facility. [G at 255; See also Finding of Fact No. 24, G at 252.]

25. On July 25, 1974 defendant filed application for the disqualification of Judge of Webster County Circuit Court. This motion was by the Court overruled on July 30, 1974. [G. at 252]

26. On July 30, 1974, defendant filed Petition for Writ of Prohibition in the Supreme Court of Missouri .... [G. at 252–53].

27. On August 7, 1974 the Supreme Court denied the Writ of Prohibition. [G. at 253]

28. On August 2, 1974 defendant was advised that his case was set for trial for August 9, 1974. [Id.]

29. On August 8, 1974 defendant filed Motion to Suppress evidence. [Id.]

30. On August 9, 1974 case was called for trial and State and Defendant announced ready for trial. [Id.]

Supported by those factual findings, the Circuit Court reached the legal conclusion that:

9. Defendant was not denied a speedy trial, nor was he denied a fair trial. [G. at 257]

The Missouri Court of Appeals considered petitioner's speedy trial claim in the context

of a claim of ineffective assistance of trial counsel for not requesting a speedy trial. In that context, the court stated:

[N]owhere does movant undertake to demonstrate that a trial conducted August 9–10, 1974, for a crime committed October 26–27, 1973, was prejudicial to him. Furthermore, movant conveniently overlooks the fact that, because of his pleas to the crime charged, he was sent to Fulton State Hospital for examination from October 31, 1973, until December 7, 1973, and that, due to a heart attack, he was hospitalized in Springfield and at Jefferson City from the first week of June, 1974, until July 7 or 9, 1974. In other words, two months of the nine and one-half months which elapsed from the date of crime and trial found defendant undergoing examination and treatment for reasons or conditions over which his trial lawyers had no control. Here there was an actual delay of only seven and a half months from the time of the crime until the trial was conducted. With no claim or showing that such a short delay was in any way prejudicial, we find no merit to this portion of defendant's point. Cf. *State v. Haddix*, 566 S.W.2d 266, 274–275[10] (Mo.App.1978). [597 S.W.2d at 269]

■ The Court of Appeals' citation of *State v. Haddix, supra,* is to a case that sets out the applicable federal standards in regard to a claimed denial of the right to a speedy trial. *See* 566 S.W.2d at 274–75, (citing *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). Those cases are cited and relied upon in *Barker v. Wingo*, 407 U.S. 514, 515, 521 n.15, 522 n.16, 531 n.32, 532 n.33, 537, 92 S.Ct. 2182, 2184, 2187 n.15, 2188 n.16, 2192 n.32, 2193 n.33, 2195, 33 L.Ed.2d 101 (1972).

As petitioner was afforded a full and fair hearing and the State courts reliably found the facts, we are obliged to presume correct the trial court determinations of fact set forth above and the finding of the Missouri Court of Appeals that petitioner did not demonstrate prejudice to his defense. *Smith v. Phillips*, —— U.S. ——, 102 S.Ct. 940, 70 L.Ed.2d —— (1981); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ Moreover, the determination of the State courts that petitioner's right to a speedy trial was not breached would be reached by independent application of *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972), wherein the Supreme Court identified four factors to be considered in determining whether the right to a speedy trial has been violated: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted his right; and (4) prejudice to the defendant.

■ The foregoing facts show petitioner's contention to be without merit. Assuming without deciding that a delay of nine and one half months between the crime and trial is "presumptively prejudicial" and therefore sufficient to trigger a speedy trial review, see 407 U.S. at 523, 92 S.Ct. at 2188, (citing Second Circuit rule requiring the government to be ready for trial within six months of arrest or face dismissal, and similar rule advocated by the American Bar Association); 407 U.S. at 530–31 n.31, 92 S.Ct. at 2191–92 n.31 (citing *United States v. Butler*, 426 F.2d 1275, 1277 (1st Cir. 1970), holding overly long, absent good reason, delay of nine months in a case depending on eyewitness testimony), nevertheless, as the Circuit Court's factual findings clearly show, valid reasons existed in this case to justify the delay.

The psychiatric evaluation ordered by the Circuit Court took five weeks to complete, and, although petitioner did not request the evaluation, it was necessary in order to determine petitioner's competency to stand trial and assist in his defense. A great deal of time was consumed by petitioner's numerous motions and the hearings they required, including motions for change of venue and substitution of counsel. Finally,

petitioner's June 3, 1974 heart attack caused him to be hospitalized in Springfield for two weeks. Petitioner's allegation that the heart attack was due, "at least in part," to his prosecution and lengthy incarceration is without any evidentiary support and difficult to believe in view of the fact that his heart condition was diagnosed long before his incarceration (A–1 at 17–18).

The reasons already stated for the lengthy incarceration establish that it was not "oppressive," cf. *Morris v. Wyrick,* 516 F.2d 1387, 1390 (8th Cir.) *cert. denied* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975) (15½ month delay, albeit presumptively prejudicial, does not automatically weigh heavily against the state). Whatever "anxiety and concern" petitioner may have suffered is indistinguishable from that necessarily incident to a criminal prosecution involving numerous time-consuming defense motions and a defendant in ill health. Petitioner was not deprived of the right to a speedy trial under the circumstances of this case.

### B. *Denial of Assistance of Counsel*

■ Petitioner's next contention is that he was denied the benefit of assistance of counsel because, prior to trial, without a hearing, the trial judge ordered him transferred from St. John's Hospital in Springfield, Missouri to the Missouri Department of Corrections in Jefferson City. Petitioner alleges that transfer rendered trial preparation virtually impossible and prevented his consultation with counsel.

The Missouri Court of Appeals, Springfield District, considered the incident giving rise to petitioner's second claim in this Court in the context of a claim that the action of the trial judge demonstrated bias. That court noted:

The matter arose in this fashion. On June 17, 1974 the trial judge entered the following order: "It appearing to the Court that William R. Hindman is now charged with three charges of felonious assault in the Circuit Court of Webster County, Missouri, said offenses having occurred in Wright County, Missouri, and having been transferred to Webster County on a Change of Venue.

"It further appearing that the said William R. Hindman has not been able to make a bond and is now being held in custody awaiting trial, and that the said William R. Hindman has been involved in several acts of violence, and that he is presently suffering from a heart attack; that by reason of his physical condition it is necessary for him to be, and he is presently confined in a hospital, and because of his violent nature and the seriousness of the crimes with which he is charged it is necessary to maintain a guard over him 24 hours a day.

"It further appearing that Webster County, Missouri, does not have the facilities to care for said prisoner, and does not have the necessary staff to maintain a guard over said prisoner, and that said care could be provided by the Missouri Department of Corrections.

"IT IS THEREFORE, ORDERED that the said William R. Hindman be delivered to the Missouri Department of Corrections to be held for Webster County, Missouri pending trial on the charges, or until further order of this Court." [543 S.W.2d 282–83]

The Missouri Court of Appeals concluded that the trial judge had authority to commit petitioner as above stated and that petitioner had failed to sustain his burden of demonstrating bias of the trial judge. 543 S.W.2d at 282.

On petitioner's Rule 27.26 motion, wherein petitioner's contention was raised in the same manner as before this Court, the Circuit Court found the following pertinent facts:

13. Defendant contacted Bill Wendt by phone on the night of October 27, 1973. He saw his attorney, Bill Wendt, at 10:00 a. m. on the morning of October 29, 1973. [G. at 250]

\*     \*     \*     \*     \*     \*

47. On June 17, 1974 the [trial] Judge ordered Defendant be delivered to the Missouri Department of Corrections to be held for Webster County,

Missouri, pending trial. Defendant had suffered a heart attack and required hospitalization. Webster County had no adequate facility. [G. at 255]

48. Defendant had been unable to make bond and was held in Wright County jail until his heart attack. He was held in the Department of Corrections from June 17th until July 7, 1974. Trial was convened August 9, 1974. [*Id.*]

49. The order directing that defendant be delivered to the Department of Corrections was made on June 17, 1974. Trial date was set for August 9, 1974. On July 25, 1974 defendant filed Motion to Disqualify Trial Judge. This was 15 days before trial and 37 days after the Order indicating the alleged prejudice of the Judge was made. On July 15, 1974 defendant filed application for Writ of Habeas Corpus. On July 16, 1974 defendant's motion for reduction of bond was overruled. On July 19, 1974 defendant filed Motion for Discovery and Disclosure. On July 30, 1974 defendant's Motion to Disqualify Judge was overruled and defendant filed petition for Writ of Prohibition. On August 9, 1974 defendant appeared with his attorney and announced ready for trial. [G. at 255–56]

Under the heading *Conclusions*, the Circuit Court found as follows:

20. The transferring of Defendant from the St. John's Hospital in Springfield, Missouri to the Missouri State Penitentiary where he was held for 3 weeks from June 17, 1974 to July 7, 1974 did not deny Defendant of his constitutional rights. Defendants [sic] lawyer had conferred with him from the time he was first employed until the time of the transfer and had the opportunity to confer with Defendant from July 7, 1974 to day of trial. The defendant fails to allege or state any fact or facts showing that the failure, if any, of his attorney to be able to confer with him for the 3 week period denied him equal protection of the law, or denied him due process or the effective assistance of counsel. Conclusions of the Defendant and his attorney are not sufficient to satisfy defendants [sic] burden of showing, by facts, he was prejudiced and was denied a fair trial. [G. at 260]

The Missouri Court of Appeals, Southern District, on direct appeal of the denial of petitioner's Rule 27.26 motion, disposed of petitioner's second contention as follows:

Under the third part of point II, supra (597 S.W.2d at 269), we detailed the net time afforded movant and counsel to prepare for trial. Such time was more than adequate. Cf. *Hudson v. State,* 552 S.W.2d 244, 246[4] (Mo.App.1977), where 97 days was held sufficient for trial preparation. [597 S.W.2d at 271]

The finding that petitioner had adequate opportunity to confer with counsel is fully supported by the record and the detailed findings of the Circuit Court. However, petitioner urges that the alleged interruption of "the free flow of communication between client and counsel" prevented "effective exchange" between client and counsel, thus violating his Sixth Amendment right (Brief of Petitioner at 47–48).

The cases cited by petitioner have little or no discernible relation to the novel theory he propounds. *See Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (order of trial judge prohibiting defendant from communicating with counsel during criminal trial); *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (right of defendant to argue in summation in a non-jury criminal trial); *Mastrian v. McManus,* 554 F.2d 813 (8th Cir.), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977) (no Sixth Amendment violation shown by eavesdropping of third party on attorney-client communications.) As the Supreme Court noted in *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940), "the denial of opportunity for appointed counsel to confer, to consult with the accused and to

prepare his defense, could convert the appointment of counsel into a sham ...." But petitioner, on the facts, was not "denied the opportunity ... to confer" with counsel.

### C. *Ineffective Assistance of Counsel*

■ Petitioner's final contention is that he was denied effective assistance of counsel in the preparation and conduct of his trial and was prejudiced thereby. Several grounds are alleged in support of this contention.

First, petitioner contends counsel were not adequately prepared for trial in that they failed to interview, depose or call Dr. James Griffin, the physician who treated Officer Dugger for the injuries he sustained on the night of October 26, 1973. In support of this contention, petitioner offers the deposition testimony of Dr. Griffin taken in relation to a civil matter, *Dugger v. Hindman*, No. 9755 (petitioner's Exhibit 3), more than one year after petitioner's trial. Dr. Griffin there testified that in his opinion, the puncture wounds found on the body of the victim were caused by "either a .22 or possibly a .38, would be my estimate;" whereas the rifle carried by petitioner was a 30.06.

Respondent rightly points out that the failure to discover this testimony before trial was not cited as constituting ineffective assistance of counsel in any State court proceeding. In addition, the point is entirely without merit. To overcome the presumption of effective assistance, petitioner must show that counsel breached an essential duty and prejudice resulting to his defense. *See, e.g., Long v. Brewer*, 667 F.2d 742 (8th Cir. 1982) (citing *McQueen v. Swenson*, 498 F.2d 207, 218 (8th Cir. 1974)). There was simply no reason before trial for petitioner's counsel to believe that Dr. Griffin's testimony, first obtained in relation to another case more than one year after petitioner's trial, would prove helpful to petitioner. *Compare Harkins v. Wyrick*, 552 F.2d 1308, 1313 n.6 (8th Cir. 1977).

Furthermore, under all the facts and circumstances reliably found in State court, see *State v. Hindman*, 543 S.W.2d 278, 281–82 (Mo.App.1976), the failure to procure Dr. Griffin's testimony can hardly be deemed prejudicial. *See United States v. McMillan*, 606 F.2d 245, 247–48 (8th Cir. 1979). In addition to the eyewitness testimony summarized earlier, the State produced two expert witnesses who, after examining defendant's rifle and the rifle casings obtained therefrom and comparing them with the casings recovered from the courtyard shortly after the shooting, concluded that those casings had been fired from defendant's rifle.[1]

■ Petitioner next claims that counsel were ineffective for failing to interview and/or produce certain witnesses whose testimony would have proved helpful to petitioner's diminished capacity defense.

A similar contention was raised in the Missouri Court of Appeals, Springfield District, on direct appeal of petitioner's conviction.[2] Petitioner there contended that the

---

1. The Missouri Court of Appeals, Springfield District, rejected a challenge to this testimony, 543 S.W.2d at 284, as did the Circuit Court on the Rule 27.26 motion. See Conclusion No. 21 (G. at 260–261). A contention in the Missouri Court of Appeals, Southern District, that trial counsel were ineffective for failure to attend to an alleged inconsistency in additional testimony relating to the discovery of the shells and casings found at the scene of the crime, was likewise rejected. 597 S.W.2d at 268.

2. A related point raised in that court was that the trial court erred in admitting testimony as to petitioner's statements and actions on the night of the crime because those statements and actions were involuntary due to lack of capacity. The Court of Appeals concluded:

Before exclusion is required, it should appear that defendant was so intoxicated or influenced that he was unable to appreciate the consequences and nature of his statements. *State v. Heather*, 498 S.W.2d 300, 304[5] (Mo.App.1973), and authorities there cited. The witnesses testified defendant appeared coherent and lucid at the time he made the reported statements—at least there was no testimony, save defendant's, which would indicate mania. Neither the trial court nor the jury was bound to accept defendant's testimony as to his condition and could properly find the statements were voluntarily, knowingly and intelligently made. [543 S.W.2d at 285–86]

trial court erred in refusing to permit a witness to identify portions of the Physician's Desk Reference Book "as a fair and accurate representation of a ten milligram Valium tablet" such as that allegedly ingested by petitioner before the crime. The Court of Appeals stated:

"[T]he rule in Missouri is that voluntary intoxication [either by alcohol or by drug consumption] is not a defense to a criminal charge and that the rule does not even allow a jury to consider such intoxication on the issue of specific intent." *State v. Richardson*, 495 S.W.2d 435, 440[6] (Mo. banc 1973). *Defendant admitted his consumption of drugs was voluntary.* Thus, even had Mr. West served as a proper link in a chain of evidence to establish that defendant had, in fact, voluntarily ingested Valium tablets, *exclusion of his testimony would not have been prejudiced on the issue of specific intent or state of mind.* [543 S.W.2d at 286] (emphasis added)

On petitioner's Rule 27.26 motion, the Circuit Court found the following facts:

46. Defendant, shortly before the offense for which he was convicted occurred, consumed doses of medicine in excess of the dosage prescribed and consumed several ounces of alcohol which had not been prescribed. [G. at 255]

The Circuit Court reached the following Conclusions:

5. Failure of Defendant's attorneys to subpoena doctors to testify at trial as to Defendant's state of mind as to diminished capacity because of medicine and whiskey taken by Defendant voluntarily is insufficient evidence to show ineffective assistance of counsel—especially since the Appellate Court has considered and rejected this defense on direct appeal. [G. at 257]

6. The condition brought about as the result of voluntarily taking of drugs and whiskey is not a mental disease or defect which may be shown to prove the absence of particular mental elements of a crime. [*Id.*]

7. In view of the fact that Defendant did not wish to assert the defense of mental disease or defect (but rather that of diminished capacity) (*see* Finding of Fact No. 50, G at 256), the fact that his lawyer did not call doctors for that purpose can not be made the basis of a charge of ineffective assistance of counsel. [*Id.*]

On appeal of petitioner's Rule 27.26 motion, the Missouri Court of Appeals again rejected petitioner's claim of ineffective assistance of counsel, reasoning as follows:

Had all of the medical evidence adduced on the Rule 27.26 motion been presented at the trial of the criminal charge, movant would not have established his "partial or diminished responsibility." There was no evidence that the unknown "psychiatric illness" caused a dimunition of responsibility for the crime committed. The only other evidence that could relate to diminished responsibility was that the claimed partial or diminished responsibility was induced by movant's self-over-indulgence in drugs and whisky which produced voluntary intoxication. The terms "mental disease or defect" do not include alcoholism or drug abuse without psychosis (§ 552.10), and self-induced intoxication, whether via voluntary intake of alcohol, drugs or both, is not an acceptable defense in a criminal case. *State v. Hegwood*, 558 S.W.2d 378, 381[4] (Mo.App.1977); *State v. Hindman*, supra, 543 S.W.2d at 286[21]. [577 S.W.2d at 268]

\* \* \* \* \* \*

[N]o alcoholic beverages whatsoever had been medically prescribed for movant's consumption on the dates of the crime and that his voluntary ingestion of drugs exceeded the prescribed dosages five or six times. [*Id.* at 269]

It is thus apparent that all of the Missouri State courts that considered the issue uniformly found that petitioner's intoxication on the day of the crime was voluntarily induced. That fact was reliably found after a full and fair hearing in the Missouri Court of Appeals on direct appeal of petitioner's

**1112**

conviction; on petitioner's Rule 27.26 motion in Circuit Court, wherein the additional evidence cited to this Court was considered, *see* G at 248; and on appeal to the Missouri Court of Appeals from the Circuit Court's denial of the Rule 27.26 motion. The finding will therefore be presumed correct. *See Smith v. Phillips,* —— U.S. ——, 102 S.Ct. 940, 70 L.Ed.2d —— (1981); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

▮▮▮ The long entrenched Missouri rule, see § 552.010, R.S.Mo. (1969), only recently uprooted by statute, § 562.076 R.S.Mo. (1979), that voluntary intoxication is not admissible to negate the specific intent element of a crime, is not unconstitutional. *See, e.g., Fisher v. United States,* 328 U.S. 463, 476, 66 S.Ct. 1318, 1325, 90 L.Ed. 1382 (1946); *United States v. Vaughn,* 614 F.2d 929, 935 & n.7 (3rd Cir. 1980). The application of that rule to the facts of this case by the Missouri Court of Appeals is not subject to review in this Court, *Greenhaw v. Wyrick,* 472 F.Supp. 730, 737 (W.D.Mo.1979), and precludes a finding of prejudice to petitioner. *See McQueen v. Swenson, supra.* Petitioner's contention that counsel were ineffective for failing to introduce evidence bearing on his diminished capacity defense is drained of merit by the full and fair adjudication in State court leading to the conclusion, in light of the evidence, that petitioner's intoxication was voluntarily induced and therefore not a defense available to petitioner. This Court may not reach a contrary conclusion. *Smith v. Phillips, supra; Sumner v. Mata, supra.*[3]

▮▮▮ Petitioner further claims counsel were ineffective for failing to offer an instruction on the diminished capacity defense. The trial court instructed the jury on the lesser included offenses (A–2 at 584–589). The Circuit Court concluded as follows:

10. The fact that Defendant's Trial attorney did not submit an instruction on 'diminished or partial responsibili-

ty' under the facts and circumstances in this case is not evidence of ineffective assistance of counsel, or the denial of due process. [G. at 257–58]

The Missouri Court of Appeals concluded:

Voluntary intoxication by alcohol and/or drugs is no defense to a criminal charge in Missouri and as the rule does not allow a jury to consider such intoxication, counsel and the court did not err in failing to request and instruct upon the issue. *State v. Hegwood, supra,* 558 S.W.2d at 381[4, 6]. [597 S.W.2d at 269]

Once again, the State court finding, which this Court is bound to respect, that petitioner's intoxication was voluntary; application of the Missouri rule in effect at trial, that such intoxication could not have supported a defense of diminished capacity; and the absence of any demonstrated prejudice to petitioner, forecloses any claim by petitioner of ineffective assistance of counsel on this point.

Finally, counsel were not ineffective for failing to make a timely motion to exclude witnesses. On this issue, the Circuit Court concluded:

19. The fact that defendant's attorney failed to request the rule on witnesses is insufficient to show Defendant was denied effective assistance of counsel, in view of the fact that Defendant fails to allege and show that his defense was impared [sic] because the rule was not invoked. [G. at 260]

The Missouri Court of Appeals reached the same conclusion, 597 S.W.2d at 271, pointing out that "when a matter rests in the trial court's discretion [*see State v. Bynum,* 508 S.W.2d 216, 218[1] (Mo.App.1974)], its exercise of that discretion by denying the rule can hardly be said to demonstrate ineffective assistance of counsel."

▮▮▮ The failure to make a timely motion to exclude witnesses does not constitute the breach of an essential duty; even

<hr>

3. Petitioner presents an alternative argument based on *Rinehart v. Brewer,* 561 F.2d 126 (8th Cir. 1977) and *Gaines v. Hopper,* 575 F.2d 1147

(5th Cir. 1978). Those cases have been read and considered. We conclude that they do not support petitioner's alternative argument.

if it did, no prejudice could be shown to have resulted in this case.

Petitioner was not deprived of effective assistance of counsel.

IV. *Order*

For the reasons stated, it is

ORDERED that petitioner's motion for habeas corpus relief under 28 U.S.C. § 2254 should be, and the same is hereby, denied.